IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CLIFFORD JUNIOR WALKER, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 116-203 |
| | ) | (Formerly CR 111-101) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing or appointment of counsel, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

#### A. Indictment and Agreement to Plead Guilty

On March 3, 2011, the grand jury in the Southern District of Georgia returned a twelve-count indictment charging Petitioner and one co-defendant with numerous firearm offenses. United States v. Walker, CR 111-101, doc. no. 1 (S.D. Ga. Mar. 3, 2011) (hereinafter "CR 111-101"). The grand jury returned a superseding indictment on May 4, 2011, adding three counts of drug offenses. CR 111-101, doc. no. 39. The superseding indictment named Petitioner in eleven counts: (1) felon in possession of a firearm, in

violation of 18 U.S.C. §§ 922(g) and 924(e) (Counts One through Six, Count Twelve); (2) possession of an unregistered firearm, in violation of 18 U.S.C §§ 5841, 5861(d), and 5871 (Count Ten); (3) transfer of an unregistered firearm without a proper application, in violation of 26 U.S.C. § 5812, 5861(e), and 5871, and 18 U.S.C. § 2 (Count Eleven); and (4) distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1) (Counts Fourteen and Fifteen). Id. The superseding indictment also included a forfeiture allegation. Id. The Court appointed attorney Richard E. Allen, under the Criminal Justice Act to represent Petitioner. Id., doc. no. 21.

Petitioner reached an agreement with the government to plead guilty to Count Fifteen: distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1). Id., doc. nos. 65-67. On August 30, 2011, United States District Judge J. Randal Hall held a change of plea hearing. During the change of plea hearing, Judge Hall established Petitioner's competence to enter a guilty plea if he so desired. Id., doc. no. 96 (hereinafter "Rule 11 Tr."), pp. 8-9, 30. Petitioner also testified under oath that he was satisfied with the assistance he had received from his attorney and that he had read and reviewed the plea agreement with counsel before signing it. Id. at 10, 13-14.

Judge Hall reviewed the charges in Petitioner's case and the possible statutory penalty for the charge to which Petitioner was pleading guilty. Id. at 5-7, 18. Judge Hall informed Petitioner that conviction on the cocaine distribution charge to which he was pleading guilty carried a sentence of imprisonment for not more than twenty years, a fine of not more than one million dollars, and a term of supervised release for at least three years. Id. at 18. When asked, Petitioner confirmed that he understood the possible penalties. Id. at 14. Judge Hall also explained that upon entry of a guilty plea, he would order the preparation of a

Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI. Id. at 19-20. Judge Hall specifically explained the PSI would calculate an advisory sentencing Guideline range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 21. Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him that he would receive a particular sentence in the case. Id. at 21-22.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed that he clearly understood those rights. Id. at 10-13. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id.

Petitioner's plea agreement included a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]o the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

CR 111-101, doc. no. 67, p. 3. By signing the plea agreement, Petitioner attested he had read and understood the plea agreement and that it accurately set forth the terms and conditions of his agreement with the government. Id. at 11.

In addition, Judge Hall reviewed the appeal and collateral attack waiver as follows:

> It calls for you to waive your right to directly appeal your conviction and sentence on any ground. And also you're waiving or giving up the right to indirectly attack you conviction and sentence in a post-conviction proceeding.

3

> However, should the Government appeal your sentence, or should your final sentence be higher than what the law allows, or higher than what the sentencing guideline range calls for in your case, then you would still have the right to appeal that sentence.

Rule 11 Tr., pp. 12-13. Judge Hall confirmed Petitioner understood and had agreed to the terms described. Id. at 15-17. Petitioner also affirmed that, other than the promises the government made in the plea agreement, no one on behalf of the government had made him any promises in order to get him to plead guilty. Id. at 17-18.

Judge Hall heard a factual basis for Petitioner's guilty plea from Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Id. at 23-28. SA Rhodes described the basis for the firearms and drug charges in the indictment, including the charge to which Petitioner was pleading guilty and Petitioner's prior convictions for the sale of cocaine and possession with intent to distribute cocaine. Id. At the conclusion of SA Rhodes's testimony, Judge Hall asked if Petitioner agreed with the agent's description of the events forming the basis of Count Fifteen to which he was pleading guilty, and Petitioner answered affirmatively. Id. at 29.

Judge Hall then expressed his satisfaction with the factual basis for the plea, again confirmed that no one had forced Petitioner into pleading guilty, and verified Petitioner wished to plead guilty Count Fifteen of the indictment because he was in fact guilty. Id. Judge Hall then summarized the proceedings as follows:

> [Petitioner] is competent. He fully understands the charge against him. There is a factual basis to support his plea of guilty on this charge. He knows the maximum punishment that could be imposed on the charge, and he knows his jury rights which he has knowingly and voluntarily waived.
>
> I further find that [Petitioner's] decision to plead guilty today was voluntary, knowing, and not the results [sic] of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement.

4

> Therefore, Petitioner is adjudged guilty of Count 15 of the indictment, based on his plea of guilty.

Id. at 30.

### B. Sentencing

Upon entry of the guilty plea, the United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty-nine, Criminal History Category at VI, and Guideline imprisonment range at 151 to 188 months. PSI ¶¶ 34, 62, 87. Petitioner was classified as a career offender within the meaning of U.S.S.G. § 4B1.1 because (1) he had previously been convicted of two felony controlled substance offenses; and (2) his offense of conviction involved distribution of cocaine base. PSI ¶¶ 31, 54, 56. The statutory maximum term of imprisonment for Petitioner's offense was twenty years. 21 U.S.C. §§ 841(a)(1) and (b)(1); PSI ¶ 86; CR 111-101, doc. no. 40.

Petitioner did not raise any objections to the the PSI. See PSI Add.; CR 111-101, doc. no. 97, Sent. Tr., p. 5. Judge Hall sentenced Petitioner on January 31, 2012, to a total term of imprisonment of 169 months. Sent. Tr., p. 8; CR 111-101, doc. nos. 83, 85. All other remaining charges against Petitioner were dismissed, and judgment entered on February 2, 2012. Sent. Tr., p. 16; CR 111-101, doc. no. 85. In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal.

### C. Post-Conviction Proceedings

On June 26, 2015, the United States Supreme Court decided Johnson v. United States, 576 U.S.-, 135 S. Ct. 2551 (2015). In Johnson, the Supreme Court found the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), to be void for vagueness and a violation of the Constitution's guarantee of due process. Johnson, 135 S. Ct. at 2563. The "residual clause" of the ACCA violent felony definition includes a

5

crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In Welch v. United States, 578 U.S.-,136 S. Ct. 1257, 1265 (2016), the Supreme Court held Johnson is a substantive decision retroactive in cases on collateral review.

In Mathis v. United States, 579 U.S. -, 136 S. Ct. 2243 (2016), the Supreme Court explained how courts are to interpret and apply the enumerated offenses provision of the ACCA when the proposed predicate conviction is based on a state statute with "disjunctive phrasing" that raises the issue as to whether the statute aligns precisely with the generic offense as intended by Congress. 136 S. Ct. at 2249, 2253. On March 6, 2017, the Supreme Court decided the advisory Guidelines are not subject to a due process vagueness challenge, and therefore, the residual clause of U.S.S.G. § 4B1.2(a) is not void for vagueness. Beckles v. United States, 137 S. Ct. 886, 897 (U.S. 2017). Thus, the Supreme Court affirmed Eleventh Circuit precedent that Johnson does not apply to career offender enhancements under the Guidelines. See United States v. Matchett, 802 F.3d 1185, 1194 (11th Cir. 2015).

Relying on a scattershot approach of mentioning Johnson, Mathis, Beckles, and non-binding Fifth Circuit case law, Petitioner attempts to excuse the untimeliness of his motion, signed on December 7, 2016, and raise at least three categories of claims: (1) the government breached his plea agreement because he received a sentence in excess of five years; (2) prosecutorial misconduct caused the sentencing court to "abuse its discretion" by adopting the findings in the PSI; and (3) he received ineffective assistance of counsel because counsel did not raise the first two issues on appeal. (See generally doc. no. 1.) All of Petitioner's claims appear to challenge his status as a career offender under the Guidelines, but the exact nature of Petitioner's arguments is unclear. Petitioner erroneously

6

references a statutory enhancement under 21 U.S.C. § 851 that was not applied in his case; his sentence was enhanced under U.S.S.G. § 4B1.1. PSI ¶ 31. Moreover, Petitioner repeatedly references a "mis-match of elements" between Georgia and federal drug statutes as a basis for disqualifying his two prior state convictions for controlled substance offenses that were used to enhance his sentence under § 4B1.1. (See, e.g., doc. no. 1, p. 14.) However, Petitioner does not identify what the "mis-match" is. Respondent opposes the motion, arguing it is untimely, barred by the collateral attack waiver in the plea agreement, and substantively without merit because he remains appropriately sentenced as a career offender under the Guidelines. (Doc. no. 5.)

## II. DISCUSSION

### A. Petitioner Is Not Entitled to an Evidentiary Hearing or Appointment of Counsel.

In his request for relief, Petitioner asks for both an evidentiary hearing and appointment of counsel. (Doc. no. 1, p. 17.) Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). Because

Petitioner's claims lack merit as a matter of law, or are otherwise barred from review in these proceedings, no evidentiary hearing is necessary, and Petitioner's request for one should be denied.

Nor is Petitioner entitled to appointment of counsel. While it is true that the Court appoints counsel pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings when an evidentiary hearing is held, as explained herein, an evidentiary hearing is not necessary in this case. Indeed, there is no automatic constitutional right to counsel in habeas proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (citing Barbour v. Haley, 471 F.3d 1222, 1227 (11th Cir. 2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985). Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under 28 U.S.C. § 2255, but such requests are discretionary when "due process or the 'interests of justice'" so require. Hooks, 775 F.2d at 1438. Moreover, appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]" McCall v. Cook, 495 F. App'x 29, 31 (11th Cir. 2012). In sum, "[i]t is well established that indigents applying for federal or state post-conviction relief, even those sentenced to death, have no federal constitutional right to counsel except in those rare cases where under the circumstances the fundamental fairness component of due process requires appointment of counsel." Donald E. Wilkes, Jr., Federal Postconviction Remedies and Relief Handbook § 2.2, at 147 (2016 ed.) (citations omitted).

The Court does not find any exceptional circumstances justifying the appointment of counsel. McCall, 495 F. App'x at 31. Petitioner does not offer any basis for his request for appointed counsel other than presumably to represent him at an evidentiary hearing on his

§ 2255 motion or at a new sentencing. However, Petitioner is not entitled to a hearing or a new sentencing proceeding, and his request for appointment of counsel should be denied.

   **B.   The § 2255 Motion Is Untimely.**

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner's judgment of conviction was entered on February 2, 2012, and because Petitioner did not file a direct appeal, his conviction and sentence became final fourteen days later. See Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir. 2000) (explaining where no timely notice of appeal is filed and motion for leave to file out of time appeal is denied, judgment of conviction final on expiration of deadline for filing notice of appeal); Fed. R. App. P. 4(b)(1). Therefore, the instant petition, executed on December 7, 2016 and outside of the one-year statute of limitations, is untimely.

Nor does Petitioner's mistaken reliance on Johnson, Mathis, or Beckles, *supra*, qualify him for a later statute of limitations. First, Johnson is of no help because it was

decided on June 26, 2015, and Petitioner did not sign his § 2255 motion until December 7, 2016, over one-year after Johnson was decided. Second, Johnson does not apply to Petitioner because he was not sentenced under the ACCA. Instead, Petitioner was sentenced as a career offender under § 4B1.1 of the advisory Guidelines for having two prior felony controlled substance offenses. PSI ¶ 31. In Beckles, the Supreme Court affirmed the Eleventh Circuit's precedent that Johnson does not apply to career offender enhancements under the Guidelines. Beckles, 137 S. Ct. at 891, 897.

Nor does Mathis, *supra*, extend Petitioner's statute of limitations. Even if Petitioner could show the analysis in Mathis applied to his career offender enhancement for a controlled substance offense under the Guidelines, he has not shown that Mathis established "a newly recognized right" that would initiate a one-year period under § 2255(f)(3) for Petitioner to file his motion. To the contrary, as the extensive list of quotes in Respondent's brief shows, (doc. no. 5, p. 4), the Supreme Court made clear its decision in Mathis was dictated by years of prior precedent and longstanding principles. See, e.g, Mathis, 136 S. Ct. at 2251 (relying on "precedents" and "longstanding principles" to explain methodology for comparing elements of state crime to listed generic offense in ACCA). The conclusion that Mathis does not trigger a one-year period for filing from the June 23, 2016 decision date is bolstered by Eleventh Circuit rulings that Descamps v. United States, 570 U.S. -, 133 S. Ct. 2276 (2013), applied prior precedent and therefore did not announce a new rule triggering a § 2255(f)(3) extension.[1] See King v. United States, 610 F. App'x 825, 828 (11th Cir. 2015);

---

[1] Descamps ruled that when faced with a 'divisible' statute, courts may use the modified categorical approach and look beyond the charging statute to determine which of the alternative elements formed the basis of the prior conviction, by reference to a limited class of documents such as indictments, plea agreements, and jury instructions. Descamps, 133 S. Ct. at 2282.

see also Mays v. United States, 817 F.3d 728, 734 (11th Cir. 2016) ("As the Supreme Court and other circuits have recognized, Descamps did not announce a new rule – its holding merely clarified existing precedent.")

Nevertheless, an otherwise untimely § 2255 motion may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred. Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S.-, 133 S. Ct. 1924, 1931 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to

present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted). As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 133 S. Ct. at 1933 (emphasis added).

Here, Petitioner has not shown that extraordinary circumstances prevented him from timely filing his motion. Petitioner has not presented any evidence, much less new evidence, to suggest that he did not commit the offense to which he pleaded guilty such that no reasonable juror would have convicted him. Indeed, Petitioner does not claim innocence of his crime of conviction, but rather he complains about his sentence and faults his attorney for not sufficiently challenging the manner in which Judge Hall arrived at the sentence. (See generally doc. no. 1.) To the extent Petitioner argues he timely filed his § 2255 motion based on the date of the Supreme Court's decision in Mathis, his contention is without merit because, as explained above, Mathis did not announce "a newly recognized right" that would initiate a one-year period under § 2255(f)(3) for Petitioner to file his motion.

### C. Even if the Motion Were Not Untimely, It Is Barred by the Valid Collateral Attack Waiver.

Petitioner's claims are also barred by his valid collateral attack waiver in the plea agreement. It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary. United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008); United States v.

Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the waiver is valid and enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same "in any post-conviction proceeding, including a § 2255 proceeding." CR 111-101, doc. no. 67, p. 3. None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum of twenty years or the advisory Guideline range as determined by Judge Hall after reviewing the PSI, to which no objections were filed. Id. Moreover, Judge Hall reviewed the appeal and collateral attack waiver provision in the plea agreement during the change of plea proceedings and confirmed Petitioner understood and had agreed to the terms described. Rule 11 Tr., pp. 12-13, 15-17.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a

13

formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary. Therefore, enforcement of this valid collateral attack waiver bars all of Petitioner's claims in this case. See Williams v. United States, 396 F.3d 1340, 1341-42 (11th Cir. 2005) (precluding claim for ineffective assistance of counsel at sentencing based on valid sentence-appeal waiver); United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver); Carstarphen v. United States, Civ. Action No. 07-0417-KD, 2008 WL 4369010, at *2-3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct in § 2255 proceeding based on valid collateral attack waiver); Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (refusing to consider merits of sentencing argument in § 2255 proceeding based on valid sentence-appeal waiver provision in plea agreement).

### D. Even if the Motion Were Not Untimely and Barred by the Valid Collateral Attack Waiver, Petitioner Was Appropriately Sentenced as a Career Offender.

Lastly, even if Petitioner were permitted to raise the claims in his § 2255 motion, which as discussed above he is not, his claim that he did not qualify for enhancement under U.S.S.G. § 4B1.1 as a career offender is without merit. As explained in the PSI, Petitioner qualified for the career offender enhancement because he had at least two prior felony convictions for a controlled substance offense, and those two offenses were delineated in two specified paragraphs. PSI ¶¶ 31, 54, 56. The Guideline definition of a "controlled substance offense" is: "An offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing

14

of a controlled substance. . . or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Petitioner argues in conclusory fashion:

> The Georgia statute under which he was convicted and enhanced on does not qualify as a controlled substance offense under state or federal law and that the Georgia statute creat[e]s a mis-match of elements, because the Georgia statutes criminalizes conduct that is not included within the Guidelines definition of a controlled substance offense.

(Doc. no. 1, p. 14.) However, Petitioner admitted without objection in the PSI that pursuant to Georgia statute, he was convicted (1) of selling cocaine in December of 1998 and sentenced to twelve years of confinement; and (2) of possessing with intent to distribute cocaine in 2004 and sentenced to eight years of confinement. PSI ¶¶ 54, 56; see also doc. nos. 5-1, 5-2.

Under the relevant statute of conviction, "it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." O.C.G.A. § 16-13-30(b) (version in effect from 1997-2012). The penalty for violating O.C.G.A. § 16-13-30(b) with respect to cocaine is "imprisonment for not less than five years nor more than 30 years" for a first offense and "not less than ten years nor more than 40 years or life imprisonment" for a second or subsequent offense. Id. § 16-13-30(d). The state offenses fall within the Guideline definition of a controlled substance offense, and there is no "mis-match" of elements.

The record is clear Petitioner admitted without objection to the two prior controlled substance offenses which were identified in the PSI as the qualifying convictions for purposes of the career offender enhancement. Both convictions fall squarely within the definition of a qualifying controlled substance offense. See U.S.S.G. § 4B1.2(b). Thus, even

15

if the § 2255 motion were not untimely and barred by the collateral attack waiver, Petitioner would not be entitled to the resentencing he seeks.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing or appointment of counsel, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 12th day of April, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA